THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

* * * * *

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | NO. 4:23-CR-335-1 |
| | * | Houston, Texas |
| VS. | * | |
| | * | 10:00 a.m. - 10:36 a.m. |
| JAVIER ALEJANDRO AGUILAR | * | |
| MORALES | * | August 30, 2023 |

* * * * *

**STATUS CONFERENCE**

BEFORE THE HONORABLE GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE

* * * * *

Proceedings recorded by electronic sound recording
Transcript produced by transcription service

*GLR TRANSCRIBERS*
9251 Lynne Circle
Orange, Texas 77630 * 409-330-1610

```
 1   APPEARANCES:

 2   For the United States:

 3         MS. SHERIN S. DANIEL
           MS. SUZANNE ELMILADY
 4         U.S. Attorney's Office
           1000 Louisiana, Suite 2300
 5         Houston, TX 77002

 6         MR. DEREK ETTINGER
           MR. JONATHAN ROBELL
 7         U.S. Department of Justice
           Criminal Division, Fraud Section
 8         1400 New York Avenue NW
           Washington, DC 20005
 9
           MR. D. HUNTER SMITH
10         U.S. Department of Justice
           Criminal Division
11         Money Laundering/Asset Recovery Section
           1400 New York Avenue NW
12         Washington, DC 20005

13   For the Defendant:

14         MR. ALEX SPIRO
           MR. DANIEL R. KOFFMANN
15         MR. GEORGE T. PHILLIPS
           Quinn Emanuel Urquhart & Sullivan, LLP
16         51 Madison Avenue, 22nd Floor
           New York, NY 10010
17
           MR. MICHAEL PACKARD
18         Quinn Emanuel Urquhart & Sullivan, LLP
           111 Huntington Avenue, Suite 520
19         Boston, MA 02199

20   Case Manager:

21         BYRON THOMAS

22

23

24

25
```

*GLR TRANSCRIBERS*
9251 Lynne Circle
Orange, Texas 77630 * 409-330-1610

1            **P R O C E E D I N G S**

2          **10:00 A.M. - AUGUST 30, 2023**

3          THE COURT:  This is 4:23-CR-335-1, United

4   States vs. Javier Alejandro Aguilar Morales.  Can

5   counsel on the line just introduce themselves for the

6   Court and state the parties they represent, starting

7   with the Government.

8          MS. DANIEL:  Good morning, Your Honor.  I'm

9   Sherin Daniel for the United States.  I would ask for

10  the prosecution lawyers to introduce themselves for

11  each agency.

12         MS. ELMILADY:  Good morning, Judge Hanks.

13  Suzanne Elmilady from Houston.  How are you?

14         THE COURT:  Great.  Good morning.

15         MS. ELMILADY:  Good morning.

16         MR. ETTINGER:  Good morning, Judge.  I'm

17  Derek Ettinger at the Fraud Section of the Department

18  of Justice, and I'm joined by my colleague, Jonathan

19  Robell.

20         THE COURT:  Good morning.  Welcome.

21         MR. ROBELL:  Good morning, Your Honor.

22         MR. ETTINGER:  Thank you.

23         MR. SMITH:  Good morning, Your Honor.  My

24  name is Hunter Smith from the Money Laundering/Asset

25  Recovery Section of the Department of Justice.

1            THE COURT:  Welcome, Mr. Smith.

2            MR. SPIRO:  And if that's all from the

3    Government, this is Alex Spiro on behalf of

4    Mr. Aguilar.  Good morning, Your Honor.  I'm joined by

5    my colleagues from Quinn Emanuel, Dan Koffmann, Michael

6    Packard, and George Phillips.

7            THE COURT:  Welcome, Mr. Spiro, and welcome to

8    your team.

9                 Anyone else on the line?

10           *[No response]*

11                Well, great.  Welcome everyone, again.

12   Thank you for making time for this Status Conference.

13   What I'd like to do this morning is just find out

14   exactly where you all are with respect to this

15   prosecution.  I did receive, I guess yesterday, the

16   motion to designate the case as complex and to exclude

17   time.  I don't know -- Mr. Spiro, have you had a chance

18   to take a look at that motion?

19           MR. SPIRO:  I have, Your Honor.  We would

20   object, as I'm happy to just outline very briefly why.

21                In essence, the long and complicated

22   history of this case is essentially of the Government's

23   own making.  They indicted Mr. Aguilar more than three

24   years ago.  They originally brought the substantive

25   FCPA and conspiracy related FCPA charges against

1  Mr. Aguilar in the Eastern District of New York.  They

2  then had to dismiss those counts after we filed a

3  motion to dismiss those counts because they were, in

4  our view, improperly filed, and I think the Government

5  would agree.  So then they re-indicted him for the

6  exact same offenses in Texas.

7  　　　　　　And so, again, this complicated history

8  has been nothing other than the anvil of their own

9  creation that sits above my client's head.  So I don't

10  really see why they would get a benefit from that.

11  　　　　　　And in terms of the voluminous discovery,

12  again, you know, the Government has a tendency to point

13  to, you know, the numbers of pages rather than the sort

14  of gravamen of it.  And while the number of pages in

15  duplicate and triplicate and, you know, overlapping,

16  disorganized, different languages and everything is in

17  its own vein awesome and large, the reality is they

18  haven't given us the bare bones things that we need and

19  we keep requesting for; right?  So in years of this,

20  nothing related to *Brady* and *Giglio*, despite all these

21  cooperators; nothing about the original text messages,

22  rather than screenshots of them; nothing about the

23  communications that we need, the company at which

24  Mr. Aguilar worked that we've requested.

25  　　　　　　And so, you know, this whole just notion

1   of, well, there's a lot of discovery, I don't think any

2   of the reasons or factors weigh in favor of this, and I

3   think that given the history of this case, if anything,

4   we would urge Your Honor to make the Government do what

5   they ought to have done years ago and comply with these

6   requests forthwith and we should move quickly in your

7   courthouse.

8            THE COURT:  Thank you, Mr. Spiro.

9               Ms. Daniel, are you speaking on behalf of

10  the Government on this one?

11           MS. DANIEL:  Your Honor, we do beg to defer

12  from Mr. Spiro's version of the history of this case.

13  And since this case was originally indicted in the

14  Eastern District of New York, I would like for

15  Assistant Chief Derek Ettinger to let Your Honor know a

16  summary of the procedural history of this case and how

17  our version differs from what the defense has just

18  stated to Your Honor.

19           THE COURT:  Mr. Ettinger?

20           MR. ETTINGER:  Very happy to.  Thank you, Your

21  Honor.

22               Your Honor, this case was indicted back

23  in September of 2020 on a two-count Indictment charging

24  Mr. Aguilar with conspiracy to violate the FCPA and a

25  money laundering conspiracy related to bribery in

1   Ecuador.  In December 2022, the Government superseded

2   and added charges related to another scheme.  He had

3   bribed officials in Mexico and that Indictment added

4   three counts.  We added another FCPA conspiracy to

5   bribe Mexican officials, a substantive count.  And we

6   also modified the 1956(h) charge to include the Mexico

7   related conduct as one of the SUAs.

8              In May of 2023, Judge Vitaliano dismissed

9   two of the counts:  The FCTA Mexico bribery scheme, as

10  well as one of the substantive counts related to

11  Mexico, for lack of venue.  There is no objection from

12  the Government there.

13             Mr. Aguilar had also moved to place the

14  money laundering count and take out the Mexico related

15  SUA and Judge Vitaliano denied that.

16             And so in August of 2023 we re-indicted

17  here in the Southern District of Texas.  The two counts

18  that were dismissed for lack of venue were indicted

19  here, as well as additional money laundering and the

20  Travel Act.

21             As far as discovery, the bulk of discovery

22  is already complete in the Eastern District.  It is an

23  ongoing investigation, so there are still some

24  documents that are coming in, and as those come in and

25  are relevant, we are turning them over.  But we are

1  according with the briefing schedule, with the motion

2  schedule that was set by the Court, 3500 material is

3  not required to be turned over in the Eastern District

4  until November of this year, and we plan to do that.

5          And, you know, the defense filed three of

6  those particular motions in the Eastern District of New

7  York and all three of them were denied.

8          THE COURT:  So I guess what I'm hearing,

9  Mr. Ettinger, is that the discovery is pretty much

10 complete.  Really, what you're looking for is to get

11 extra time in case you need more discovery down here or

12 in case discovery in New York might assist this case?

13          MR. ETTINGER:  Yes, Your Honor.

14          THE COURT:  Oh, I'm sorry.

15          MR. ETTINGER:  No, I'm sorry, I didn't mean to

16 interrupt.

17          THE COURT:  Oh, no, I guess I just wanted to

18 make sure I understand.  It's not like you're asking

19 time to conduct a lot more discovery.  It sounds like

20 most of the work is done.  It's just a matter of

21 keeping discovery open here for developments in New

22 York and not having to try this case until after the

23 New York case is tried.

24          MR. ETTINGER:  Yes and no, Your Honor.  So the

25 trial is scheduled for January 2nd; and if that trial

 1  goes first, then we think it makes sense to not proceed

 2  with this case until some of those issues are resolved

 3  there because it will change the landscape and so

 4  they'll know exactly where that's going to fall.

 5          We are prepared to try this case first.

 6  If that is Your Honor's preference, we are ready to go.

 7  Our understanding from the defense is that that is not

 8  their preference, but it sounds to me like maybe I had

 9  misunderstood that.  If they are prepared to go here

10  first, then we are happy to get on your schedule and

11  to get on your discovery schedule and move as

12  expeditiously as possible.

13          THE COURT:  Mr. Spiro?  Uh-oh, can't hear you.

14              Mr. Spiro?

15          MS. DANIEL:  Uh-oh, he's been muted.

16          THE COURT:  Oh, I just heard you.  No.

17          Mr. Spiro, can you hear me?  You can hear

18  me, but we can't hear you.  For some reason we can't

19  hear you.

20          *[Pause]*

21          MR. ETTINGER:  Maybe while Mr. Spiro is

22  trying to get back, I can just add one more thing?

23          THE COURT:  Yes.

24          MR. ETTINGER:  So one thing that might be

25  worth knowing is that because we do have the money

1   laundering counts that include an SUA that involves the
2   conduct that's at issue here --
3           THE COURT:  Let's wait because it sounds like
4   Mr. Spiro, I want him -- or other team members are
5   still on the line; correct?
6           MR. KOFFMANN:  Yes, Your Honor; that's
7   correct.  This is Daniel Koffmann.
8           THE COURT:  Okay, great.  Then you can
9   continue.
10          MR. ETTINGER:  Okay, thank you.
11              So we do expect a lot of the evidence that
12  will come in here will be involved in that court as
13  well with respect to the money laundering count, as
14  well as potentially 404(b).  And in your court, as
15  well, we would expect that a lot of the Ecuador related
16  conduct would be at issue here because we would plan to
17  make a motion to introduce it as 404(b).
18          THE COURT:  Mr. Spiro, your team members were
19  online for the entire time while you were off.  So --
20  uh-oh, we still can't hear you.
21              Let's give him a chance.
22              Mr. Koffmann, can you shed some light on
23  the trial date issue?
24          MR. KOFFMANN:  Yes, Your Honor.  So it's our
25  position that we think, given the history of this case,

1   that it makes more sense for the trial in the Eastern

2   District of New York where that proceeding has been,

3   you know, nearly into its fourth year, that it makes

4   sense to have that trial as scheduled in January, and

5   then to have the trial before Your Honor in the

6   Southern District of Texas after that.

7           And so with respect to the Government's

8   motion that they filed yesterday evening, as Mr. Spiro

9   said, we do -- we don't believe that there is a need --

10   or, you know, we do object to designating the case as

11   complex, as the Government has requested.  However, we

12   don't necessarily object to exclusions of time under

13   the Speedy Trial Act to the extent that Your Honor sets

14   a trial date that is sometime next year.  We would not

15   object to the exclusion of time, just specifically

16   their motion, the relief they sought was to designate

17   the entire case as complex, which we don't think is

18   necessary and we would object to that.

19           So why don't I pause and see if Mr. Spiro,

20   if we can hear him.

21         THE COURT:  One last time.  It does not work?

22         MR. SPIRO:  I can hear you.

23         THE COURT:  You can hear me.

24         MR. SPIRO:  I can't -- you know, normally it

25   takes the Court some time to figure out I don't know

1   how to use technology.  So I appreciate -- I've been

2   revealed even in our first appearance.

3               And I don't need to hear again what the

4   Government has to say.  I have it on -- it's like

5   clockwork, and I'm sure my colleague answered

6   appropriately.  But the reality is we're ready to go in

7   New York.  This is not an attempt to now completely

8   mess with everybody's schedule.

9               My point really is that we don't also need

10  a complete freezing of this case for nine months while

11  that case goes to trial.  This case should proceed on

12  what I would call a normal schedule.  It could be a

13  normal [u/i] schedule by Your Honor's standards.

14               But we have motions to file.  The

15  defendant is right, he shouldn't have to sit -- they

16  decided to bring the case when they decided to bring

17  it.  They could have brought this case after the [New

18  York] trial.  They decided to bring them

19  simultaneously, you know.  The Court can ask themselves

20  why.  I think I  know why, but it doesn't matter.

21               The reality is we should have a right to

22  file motions in a timely manner.  We wouldn't be able

23  to go to trial immediately either because there's many

24  issues that we would ask the Court to resolve and we

25  don't, frankly, have much of the discovery we've asked

1  for regarding Mexico.  But then after the New York

2  trial happens, and there's a verdict, the case in front

3  of Your Honor should proceed.  We shouldn't wait for

4  them to start then and then proceed.

5           That's sort of the gravamen of my point.

6           THE COURT:  I don't think I heard Mr. Ettinger

7  say that, and maybe I missed it.

8           It sounded like, Mr. Ettinger, you were

9  fine with this case.  I don't think what you're saying

10 by -- well, maybe -- let me not put words in your

11 mouth.  I didn't understand this as basically by

12 granting this motion, the case was just going to be

13 stayed completely with nothing going on until after the

14 New York case was tried.  I didn't get that.  Is that --

15           MR. ETTINGER:  No.  That's right, Your Honor.

16 I would note that the case is already designated as a

17 complex case in the Eastern District of New York.  And

18 so we thought it was appropriate to designate it as a

19 complex case here.  Our thought is that we would get a

20 trial date here that works for you after the trial in

21 the Eastern District and set the motion schedule to

22 whatever state that is, as whatever your practices are.

23 And we'll continue to produce discovery in the Eastern

24 District of New York as appropriate, and in this case

25 as appropriate with respect to those dates.

1          MS. DANIEL:  Your Honor, may I add from the

2   Southern District perspective briefly?

3          THE COURT:  Sure.

4          MS. DANIEL:  Yes, Your Honor.  I believe the

5   disconnect is that the defense would like a briefing

6   schedule in front of Your Honor starting -- based on my

7   conversation Counsel Koffmann, they would like a

8   briefing schedule starting September.

9          What we're asking is, as is customary in

10  the Southern District, we're asking that the deadlines

11  and the Scheduling Order set a date for trial and

12  motions and deadlines at a date after the trial in New

13  York.  We're not essentially asking for this case to be

14  stalled, but we're asking that these motions not be

15  litigated all over again in Texas, since it's already

16  been litigated and ruled on by the judge in New York.

17          So any ruling that the defense may ask

18  Your Honor to do could be in contradiction to what's

19  been ruled by the judge and create issues or possible

20  concerns from the trial in New York.  That's the

21  purpose for why we have asked for this complex setting.

22  And I believe that it's unfair for the defense to ask

23  for a date for trial after New York, yet want to

24  litigate motions, as is in the current schedule that

25  Your Honor has set forth.

 1          THE COURT:  Okay, well, here's the deal.  I

 2  mean, there is no complex case, so it's going to be

 3  designated as complex.

 4          With respect to the deadlines, it seems

 5  like you guys are not really opposed to working out a

 6  schedule for briefing and a schedule for trial that

 7  works with everyone's obligations in New York.  That's

 8  what I'm hearing.

 9          MR. SPIRO:  Your Honor, what I take the

10  Government to be doing is exactly what I sort of

11  previewed a moment ago, and I don't want to conflate

12  the complex case ruling, the tentative ruling that Your

13  Honor just gave to moving on from that as the schedule.

14          What I just heard the Government say is

15  that, effectively, they do want a stay.  They don't

16  want to be in front of the Court in Texas until there's

17  a trial on the New York matter, which is not acceptable

18  for the defense, and we would urge the Court not to

19  allow that.  We have every right to -- if we think

20  there's a discovery violation, an issue, a motion that

21  we need to bring, a motion that's right, we have every

22  right in our view to bring that before this Court.

23  They don't get a stay.  They don't get to decide to

24  bring this case and then say, "Well, we don't want to

25  deal with it until after the New York case."

1             And so the reason I made the arguments --

2    many of the reasons I made the arguments as to the

3    complex case is because I know that their real

4    motivation is what you just heard, which is that they

5    are asking effectively to stay this case until after

6    the New York case.

7             MS. ELMILADY:  Your Honor --

8             THE COURT:  Well, if you do that, then you

9    just need -- oh, I'm sorry, Ms. Elmilady.

10             MS. ELMILADY:  No, no, you go ahead, Judge.

11   You're the Judge.

12             THE COURT:  I didn't mean to interrupt anyone.

13   I just wanted to kind of cut to the chase.

14             I just thought, Mr. Spiro, if they do

15   that, then you file a motion or, you know, you point

16   out to the Court that you need to move forward in this

17   matter.  Granting that the motion as complex isn't  a

18   stay in this case.  It does not operate as a stay.  It

19   basically designates this case as complex for purposes

20   of scheduling, but it doesn't prevent you from asking

21   for earlier dates for motions.  And then I'll have to

22   hear the arguments of the parties as to why that should

23   or should not happen.

24             Whether or not the case is designated as

25   complex doesn't make -- won't affect or wouldn't affect

1   when I decide to hear motions.  That is, even if this

2   case wasn't decided as complex, if it turned out that

3   you file a motion and that issue is before the judge

4   in New York, it doesn't make judicial sense from a

5   judicial economy standpoint to try to get dueling

6   motions resolved at the same time.  I'd need to find

7   out what's going on in New York, whether or not the New

8   York judge is about to rule on the issue, has there

9   been argument on the issue.  I mean, ruling that the

10  case is a complex case doesn't affect any of that.

11          MR. SPIRO:  I would agree, Your Honor.  I

12  would agree.  So we would ask then at this time to be

13  able to file motions before Your Honor at the beginning

14  of September and set a motion schedule.

15          MS. ELMILADY:  And may --

16          THE COURT:  And -- oh, I'm sorry, I keep

17  interrupting.  Ms. Elmilady, the floor is yours.

18          MS. ELMILADY:  Thank you, Judge, I apologize.

19          So we would ask that, you know, if they

20  want to proceed a litigation of motions currently, then

21  we'd ask for a trial date to stay -- you know, delay

22  this.  You know, let's just litigate the whole thing.

23          However, it sounds like they do want this

24  case to be tried in New York first, which then like,

25  you know, Ms. Daniel just said, that in the Southern

1   District of Texas the practices are we litigate those

2   motions and everything, you know, generally closer to

3   trial.  And if Your Honor is going to grant for them to

4   file their motions sooner than later, we'd ask that our

5   response deadline should be extended until after the

6   new year.

7                 Thank you.

8          MR. SPIRO:  All I can say to the Court is,

9   having litigated in many states and many courts, I've

10  never heard of such a thing that the Government has

11  requested.  They decided to bring this case when they

12  did, they did it tactically, and now they're basically

13  effectively asking for a stay.

14              And the reality is the defendant is right.

15  And if we think there is a right motion that ought to

16  be before the Court on any issue, it's our strong view

17  that we should be able to file those motions and they

18  should have to timely respond.  I'm not here to tell

19  them they should be on a six-day deadline.  You know,

20  I'm fine to have a reasonable motion schedule, but I

21  just don't understand.  It doesn't even make sense that

22  I would not be allowed to file motions in a case, in an

23  Indictment that they just decided to file for six to

24  nine months; that I am not allowed to being anything to

25  the Court's attention is the Government's view.  And

1  that's just not right, I've never heard of that before.

2         THE COURT:  Well, here's the problem.  You

3  guys at this point are asking me for an advisory ruling

4  as to whether or not I'm going to allow a motion to be

5  filed.  There's no motion before me.  I don't know what

6  the motion is.  I don't know if it's relevant to go

7  into trial in this trial.  I don't know if it's

8  relevant to go into trial in New York.  I cannot give

9  you an advisory opinion as to whether or not I'm going

10 to allow a motion to be filed or a briefing schedule

11 for a motion.  I need to see the motion before I can

12 rule on it.

13         So the only issue I'm looking at is

14 whether or not to designate this case as complex.  That

15 motion is going to be granted.  This case is complex.

16         As far as the timing for various motions,

17 either you guys work that out or you file the motion.

18 And then, Mr. Spiro, you file your motion and then I

19 hear from the Government as to why the Government

20 should or should not be required to respond by a

21 certain date.

22         I mean, I don't know if -- for example,

23 it could be a motion that is a duplicate of a motion

24 that's currently pending before the case -- before the

25 Court in the Eastern District of New York.  If that's

1  the case, then I may not want to hear that motion until

2  after I receive a ruling -- or after the New York Court

3  rules, just depending on what the issues are.  I mean,

4  I can't answer those questions at this point in time.

5          MR. SPIRO:  I understand the Court's remarks.

6  Thank you.

7          THE COURT:  So the bottom line is, by the

8  designation as complex, I'm not issuing an advisory

9  ruling as to whether or not motions should or should

10  not be allowed.  It's designated as complex.

11          Everybody agrees with respect to the fact

12  that deadlines as far as trial are definitely going to

13  be pushed back because I think everybody agrees on

14  trial.  I think the issue is really when motions can be

15  filed and maybe when certain types of disclosures might

16  need to be filed, and we'll take those up one at a time

17  as they are presented to the Court.

18          But from your standpoint, Mr. Spiro, the

19  designation does not count -- it does not constitute an

20  advisory ruling as to whether or not you will or will

21  not be allowed to file a motion.

22          MR. SPIRO:  Perfectly clear.  Thank you, Your

23  Honor.  That's all we wanted.

24          THE COURT:  Ms. Daniel, is that clear?

25          MS. DANIEL:  That is clear, Your Honor.

1           THE COURT:  Is there anything else we need to

2    take care of this morning?

3           MS. DANIEL:  Yes, Your Honor, just one more

4    point.

5           THE COURT:  Oh.

6           MS. ELMILADY:  May I proceed?

7              Yeah, there's just one more thing.

8    There's a Protective Order that's been entered in New

9    York.  We're asking that the Court adopt the Protective

10   Order filed in the Eastern District of New York in this

11   case.

12          THE COURT:  Mr. Spiro, do you have a problem

13   with the Protective Order applying in this case?

14          MR. SPIRO:  I don't believe so, but

15   Mr. Koffmann is an expert in Protective Orders, and I

16   want to make sure that that as somebody that's not an

17   expert in Protective Orders, I hear from Mr. Koffmann,

18   if that's okay with the Court.

19          MR. KOFFMANN:  So I think that that should be

20   fine, Your Honor.  This effectively is the first time

21   that we're hearing that the Government's preference is

22   to enter the same Protective Order before Your Honor

23   that was entered in the Eastern District of New York.

24   Obviously, we signed it in Brooklyn.  I anticipate

25   we'll have no issue with it here.  But perhaps by the

1   end of the day we could just take a minute to review

2   and make sure that there's no unique issues that could

3   arise with the prior Protective Order being entered

4   before Your Honor.

5           THE COURT:  Can you get to me by close of

6   business tomorrow and indicate whether or not you want

7   me to sign it?  And if you do, send a copy to me to my

8   case manager and I'll get it signed and entered.

9           MR. KOFFMANN:  Yes, Your Honor.

10          THE COURT:  Ms. Daniel, you said you had

11  another thing?

12          MS. DANIEL:  Your Honor, just to clarify for

13  the record, is Your Honor continuing the trial as it is

14  in the Scheduling Order entered, or would Your Honor

15  request that we consult with each other and propose a

16  new trial date?

17          THE COURT:  That you should consult with each

18  other and get a new trial date, because it seems like

19  that's the one thing you all agreed on was that this

20  case should be continued until after the trial in New

21  York.  So, if you can give me a date on that issue,

22  since that's something that you can all agree to, if

23  you can get me that, then I can put it in the order

24  declaring the case is complex.

25              And can you get that to me also by close

1  of business tomorrow, and that way I can enter this

2  order, a written order, declaring the case as complex,

3  and also in that order set the case for trial.  And

4  then in the order I'm not going to -- well, I need a

5  date for all pretrial motions that you want me to put

6  in the order.

7            But again, Mr. Spiro, just to make the

8  record clear, this order is not a -- this order does

9  not preclude you from filing motions, and it's not an

10  advisory ruling on whether or not certain types of

11  motions will or will not be allowed to be filed.

12         MR. SPIRO:  Perfectly clear.  Thank you.

13  That's fine.

14         THE COURT:  And can you guys do all that by

15  close of business tomorrow?

16         MS. DANIEL:  Yes, Your Honor.  We will get

17  with each other and get Mr. Thomas a date that we can

18  get Your Honor tomorrow.

19         THE COURT:  Is there anything else we need to

20  take care of this morning?

21         MS. DANIEL:  I believe nothing further from

22  the Government.

23         THE COURT:  Mr. Spiro?

24         MR. SPIRO:  Nothing further from the defense,

25  Your Honor.

1         THE COURT:  Well, it's good to see you all

2    again.  I look forward to working with you on this

3    case.  Very interesting issues, so I'm looking forward

4    to it.  If you need me for anything, please get in

5    touch with me through my case manager and we'll set a

6    hearing.  Please don't let things kind of just spiral,

7    which you wouldn't, but kind of spiral out of control.

8    If you need my help with anything -- issues, discovery

9    problems, deadline problems -- contact Mr. Thomas.  I

10   can get on the line within 24 or 48 hours and we can

11   try to work through it.

12        MS. DANIEL:  Thank you, Your Honor.  And thank

13   you for accommodating us in a Zoom call at such short

14   notice.  We appreciate it.

15        THE COURT:  Not a problem at all.

16             Well, take care, everyone.  We'll talk

17   again soon.

18         *[10:36 a.m. - Proceedings adjourned]*

19

20

21

22

23

24

25

C E R T I F I C A T I O N

I certify that the foregoing is a correct transcript of the electronic sound recording of the proceedings in the above-entitled matter.


/s/ Gwen Reed

9-6-23