UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v. § | Criminal No. 4:23-cr-00335 |
| § | |
| JAVIER ALEJANDRO AGUILAR MORALES, § | |
| Defendant § | |

**UNITED STATESRESPONSE TO DEFENDANT'S**
**MOTION FOR A BILL OF PARTICULARS**

United States Attorney's Office
Southern District of Texas

/s/_____
Sherin Daniel
Suzanne Elmilady
Assistant United States Attorneys
1000 Louisiana St., Suite 2300
Houston, TX 77002
Tel: (713) 567-9000

*Counsel for the United States*

# Table of Authorities

**Statues, Rules, and Regulations**

15 U.S.C. § 78dd-2 .................................................................................... 1, 11

15 U.S.C. § 78dd- 2(a)(1) .................................................................................... 7

18 U.S.C. § 1952 .................................................................................... 1

18 U.S.C. § 1956 .................................................................................... 1

18 U.S.C. § 1956(h) .................................................................................... 2

18 U.S.C. § 3500 .................................................................................... 4

Tex. Penal Code § 32.43 .................................................................................... 3, 7

Texas Commercial Bribery Statute 32.43(c), (b) ............................................ 11

**Case Law**

*Asselin*, 2005 WL 2365326 at *2 .................................................................................... 8

*Bryan v. United States*,
    524 U.S. 184, (1998) .................................................................................... 10

*S.E.C. v. Jackson*,
    908 F. Supp. 2d 834 (S.D. Tex. 2012) ........................................................ 10

*Sherriff*, 549 F.2d at 606. .................................................................................... 5

*Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber*,
    327 F.3d 173 (2d Cir. 2003) .................................................................... 10

*United States v. Aguilar*,
    2023 WL 3807383 (E.D.N.Y. May 31, 2023) ............................................ 2

*United States v. Alperti*,
    867 F.Supp. 142 (E.D.N.Y. 1994) .............................................................. 9

*United States v. Asselin*, No. CRIM.04-30033-MAP, 2005 WL 2365326 (D. Mass. Sept. 9, 2005) .................................................................................... 8

*United States v. Barker*,
    No. 3:16-CR-516-D, 2017 WL 4167512 (N.D. Tex. Sept. 20, 2017) ........ 11

*United States v. Bell*,
    No. 19-CR-550 (NSR), 2020 WL 7260518 (S.D.N.Y. Dec. 10, 2020) ........ 8

*United States v. Bethany*, No. 3:18-CR-0297-S, 2020 WL 1976827 (N.D. Tex. Apr. 23, 2020) (quoting *United States v. Faulkner*, Crim. No. 3:09-CR-249-D(02), 2011 WL 2880919 (N.D. Tex. July 15, 2011 ...................................... 4-5

*United States v. Burgin,*
   621 F.2d 1352 (5th Cir. 1980) ........................................................................ 4

*United States v. Carlos Espinosa Barba*, Cr. No. 21-259 (ENV) (E.D.N.Y.),
Dkt. 4 ............................................................................................................... 5-6

*United States v. Davis*,
   582 F.2d 947 (5th Cir. 1978) .......................................................................... 5

*United States v. Davis*,
   No. 3:20-CR-0575-X, 2021 WL 63345 (N.D. Tex. Jan. 7, 2021) ................. 4

*United States v. Djuga*, Crim. A. No. 14-140, 2015 WL 1412100 at *2 (E.D. La. Mar. 25, 2015) (quoting *United States v. Mackey*, 551 F.2d 967, 970 (5th Cir. 1977)) ........................................................................................................ 4

*United States v. Espy,*
   989 F. Supp. 17 (D.D.C. 1997) ...................................................................... 9

*United States v. Garibalde-Barron*,
   No. EP-12-CR-1406-KC, 2013 WL 427389 (W.D. Tex. Feb. 4, 2013) ....... 8

*United States v. Gonzalo Guzman Manzanilla*, Cr. No. 21-260 (ENV)
(E.D.N.Y.), Dkt. 8 .......................................................................................... 6

*United States v. Kay*, 359 F.3d 738, 743 (5th Cir. 2004) .................................. 7

*United States v. Kay,*
   513 F.3d 432 (5th Cir. 2007) ........................................................................ 10

*United States v. Kilrain,*
   566 F.2d 979 (5th Cir. 1978) ........................................................................ 4

*United States v. Kirkham,*
   129 F. App'x 61 (5th Cir. 2005) .................................................................... 5

*United States v. Kozeny,* 582 F. Supp. 2d 535, 541 (S.D.N.Y. 2008) ................ 7

*United States v. Lionel Hanst*, Cr. No. 22-75 (ENV) (E.D.N.Y.) ...................... 5

*United States v. Miller,*
   No. 15-0012, 2015 WL 1395298 (E.D. La. Mar. 25, 2015) ........................ 8

*United States v. Murgio,*
   209 F. Supp. 3d 698 (S.D.N.Y. 2016) .......................................................... 8

*United States v. Sherriff,*
    546 F.2d 604 (5th Cir. 1977) ......................................................................... 4

*United States v. St. Pe,*
    No. 92-459, 1992 WL 345118 (E.D. La. Nov. 6, 1992) ............................... 8

*United States v. Trie,*
    21 F. Supp. 2d 7 (D.D.C. 1998) .................................................................... 9

*United States v. Wilson*, No. 94–CR–140, 1994 WL 777319 (E.D. Wis. Nov. 30, 1994) ........................................................................................................ 8

*Weightman v. State,*
    975 S.W.2d 621 (Tex. Crim. App. 1998) (en banc) ............................... 12, 13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | Criminal No. 4:23-cr-00335 |
| JAVIER ALEJANDRO AGUILAR MORALES, Defendant | § § § | |

**UNITED STATESRESPONSE TO DEFENDANT'S
MOTION FOR A BILL OF PARTICULARS**

**I.     PROCEDURAL HISTORY**

The defendant is charged in a five-count Indictment with: conspiring to violate and violating the Foreign Corrupt Practices Act ("FCPA"), 15 U.S.C. § 78dd-2 (Counts One and Two); violating the Travel Act, 18 U.S.C. § 1952 (Count Three); and committing two money laundering violations, contrary to 18 U.S.C. § 1956 (Counts Four and Five). All five counts involve an alleged scheme to bribe Mexican officials at PEMEX Procurement International ("PPI") in order for the defendant to obtain or retain business for himself and his employer, Vitol, Inc. ("Vitol").

Counts One and Two were previously charged in the Eastern District of New York along with several other counts involving a related scheme to bribe Ecuadorian officials at Petroecuador for the same purposes. *United States v. Aguilar*, 20-CR-390 (ENV) (E.D.N.Y. 2020) (the "EDNY Case").

On May 31, 2023, without objection from the government, those two counts (known as Count Two and Count Four in the EDNY Case) were dismissed from the EDNY Case for lack of

5

venue, without prejudice to their refiling in a different district. *United States v. Aguilar*, 2023 WL 3807383, at *3 (E.D.N.Y. May 31, 2023). The Honorable Eric N. Vitaliano, however, denied the defendant's motion to dismiss a portion of Count Five, which charged a money laundering conspiracy. That count alleged a conspiracy under 18 U.S.C. § 1956(h), involving multiple specified unlawful activities.[1] Judge Vitaliano denied the defendant's request to "splice" that charge and dismiss only the portions of Count Five related to the Mexico bribery scheme for lack of venue. *Id.*

After Judge Vitaliano made these rulings, he denied defendant's Third Motion for a Bill of Particulars as to the Mexico-related Scheme, in which the defendant requested, among other things, the very same particulars he is requesting in the instant motion. EDNY Case, Dkt. 165. He noted that "the motion remain[ed] live as to Count Five, and the arguments in the motion remain[ed] applicable to that count."[2] *Id.* at 1 n.1.

## II. PRELIMINARY STATEMENT

Defendant moves here for a bill of particulars "disclosing the alleged quos in the quid pro quo bribery scheme." Def. Mot at 10. Defendant seeks particularity with respect to the "confidential, inside information" he allegedly received from the Mexican officials, "how or why it was 'confidential,'" and "how it provided Vitol with 'advantages' or 'influence' that [was]

---

[1] These specified unlawful activities included violations of the FCPA related to the Mexico bribery scheme, violations of the FCPA related to the Ecuador bribery scheme, and violations of Mexican and Ecuadorian law. EDNY Case, Dkt. 120, at 23-4, ¶ 56.

[2] On September 21, 2023, Judge Vitaliano denied defendant's renewed motion to dismiss or "splice" Count Five, "declin[ing] Aguilar's attempt to revive already-rejected arguments to make the fundamental finding of duplicitousness that is essential to his motion." EDNY Case, Dkt. 176 at 5.

6

'improper.'" Def. Mot. at 7. As demonstrated further below, the defendant is not entitled to these particulars. It is clear from the Indictment (and the other public charging documents) that the information that the defendant requested and that the Mexican officials provided pursuant to the bribery scheme was related to business the defendant hoped to win from PPI for his employer Vitol, including, but not limited to, a contract to supply liquid ethane (the "Ethane Supply Contract") to the Mexican state-owned oil company, PEMEX. Regardless, the FCPA deems offering or paying bribes to win business as a violation of the law, whether an official actually provides confidential, inside information; non-confidential, non-inside information; or no information at all. In other words, the government does not need to prove that Aguilar received any information at all, much less confidential information, to show that Aguilar violated the FCPA. The same reasoning applies to the Texas Commercial Bribery Statute, which criminalizes offering, conferring, or agreeing to confer a benefit, but does not require that any particular benefit actually be conferred. *See* Tex. Penal Code § 32.43 (c). Thus, there is no requirement that the government identify that information with particularity, or explain why it was confidential, in a bill of particulars.

Moreover, the defendant's motion is soon to be moot. At the defendant's request, the trial in the EDNY Case will take place before the trial in this District. That trial, which is scheduled to begin on January 2, 2024, will provide the defendant a wealth of particulars in advance of trial here. In fact, the defendant can expect to start the Southern District of Texas trial with as much information about the case against him as any defendant conceivably could have: he will have had close to a full preview of the government's case in EDNY, including the chance to review witness

7

statements produced under 18 U.S.C. § 3500 (due in EDNY on November 17, 2023) and to cross-examine most or all the government's witnesses about this issue. Defendant's request, therefore, seeks information that is far beyond what is necessary to prepare for trial and to avoid surprise, and should be denied.

## II. LEGAL STANDARD

"The purposes of a bill of particulars are to obviate surprise at trial, enable the defendant to prepare his defense with full knowledge of the charges against him, and to enable double jeopardy to be pled in case of a subsequent prosecution." *United States v. Djuga*, Crim. A. No. 14-140, 2015 WL 1412100 at *2 (E.D. La. Mar. 25, 2015) (quoting *United States v. Mackey*, 551 F.2d 967, 970 (5th Cir. 1977)). "The purpose is not to provide a detailed disclosure before trial of the Government's evidence," *United States v. Sherriff*, 546 F.2d 604, 606 (5th Cir. 1977), nor to compel the government "to explain the legal theories upon which it intends to rely at trial," *United States v. Burgin*, 621 F.2d 1352, 1359 (5th Cir. 1980); *see also United States v. Kilrain*, 566 F.2d 979, 985 (5th Cir. 1978) (affirming denial of bill of particulars because "defendants are not entitled to discover all the overt acts that might be proved at trial"); *United States v. Davis*, No. 3:20-CR-0575-X, 2021 WL 63345, at *3 (N.D. Tex. Jan. 7, 2021) ("The outlining of legal theories is for the opening of trial, not a bill of particulars").

"A bill of particulars is unnecessary where 'the Indictment sets forth the elements of the offense charged and sufficiently apprises the defendant of the charges against him to enable him to prepare for trial.'" *United States v. Bethany*, No. 3:18-CR-0297-S, 2020 WL 1976827, at *2 (N.D. Tex. Apr. 23, 2020) (quoting *United States v. Faulkner*, Crim. No. 3:09-CR-249-D(02),

8

2011 WL 2880919, at *2 (N.D. Tex. July 15, 2011)). Further, "where the Government has provided the necessary information in another satisfactory form, such as through discovery, a bill of particulars is unnecessary." *Id.* (quoting *Faulkner*, 2011 WL 2880919, at *2); *see also United States v. Kirkham*, 129 F. App'x 61, 72 (5th Cir. 2005).

A defendant has no right to a bill of particulars. *See Burgin*, 621 F.3d at 1352. Whether to grant a motion for a bill of particulars is committed to the trial's court "substantial discretion," which it should exercise "infused with the ambience of the trial scene and tailored" to the facts of each case. *United States v. Davis*, 582 F.2d 947, 951 (5th Cir. 1978). That exercise of discretion will not be disturbed on appeal without a showing of prejudice or a clear abuse of discretion. *See Sherriff*, 549 F.2d at 606.

### III. ARGUMENT

**A.** *The defendant has sufficient information to prepare his defense and protect against double jeopardy*

The government has described the scheme to bribe Mexican officials in a detailed Indictment charging Aguilar in the Southern District of Texas, in a Superseding Indictment in the Eastern District of New York, in an information charging Aguilar's former employer Vitol as well as a deferred prosecution agreement with the same, in an information charging Lionel Hanst, *see United States v. Lionel Hanst*, Cr. No. 22-75 (ENV) (E.D.N.Y.), Dkt. 8, an intermediary who pleaded guilty to conspiring with Aguilar to launder money, and in informations charging Gonzalo Guzman and Carlos Espinosa, two Mexican officials Aguilar is alleged to have bribed, *see United States v. Carlos Espinosa Barba*, Cr. No. 21-259 (ENV) (E.D.N.Y.), Dkt. 4; *United States v. Gonzalo Guzman Manzanilla*, Cr. No. 21-260 (ENV) (E.D.N.Y.), Dkt. 8.

9

Several volumes of discovery supplied in the EDNY Case supplement the government's charging instruments, and provide detailed evidence of the information passed to Aguilar, including WhatsApp conversations between Aguilar and Guzman, between Guzman and Espinosa, and between Aguilar and an intermediary who helped facilitate the bribes to Guzman and Espinosa on Aguilar's behalf.[3]

Further, Overt Act i of the Indictment charges that:

> On or about May 11, 2018, [the defendant] communicated with Espinosa, via . . . WhatsApp, and asked Espinosa for confidential, inside information to assist Vitol in winning business with PPI. Specifically, in sum and substance, [Aguilar] requested information concerning Vitol's competitors in connection with a bidding process for business with PPI.

Indictment at ¶34(i).

Together, the record paints a comprehensive picture of the charged scheme, the type of information passed between the officials and Aguilar, and the bribes paid to Mexican officials, well beyond what is necessary for Aguilar to prepare his defense and to prevent unfair surprise at trial.

    B.    *The nature of the information passed to Aguilar is not an element of any offense for which he is charged.*

In the Indictment and other charging documents, the government characterizes the information that Guzman and Espinosa provided to the defendant in exchange for bribes as "inside" and "confidential." Such a characterization, however, is not an element of the FCPA or

---

[3] The WhatsApp messages were produced to the defendant on November 26, 2021, October 12, 2022, and April 27, 2023.

of the charged money laundering or Travel Act offenses. In fact, Aguilar need not have received *any* information at all, much less confidential information, to be convicted.

Instead, to convict Aguilar under the FCPA, the government need only prove that Aguilar bribed (or offered to bribe, or promised to bribe, or authorized a bribe payment to) Guzman or Espinosa for one of four enumerated "*purposes*" to assist Aguilar in obtaining or retaining business for himself, Vitol or other persons. 15 U.S.C. § 78dd- 2(a)(1) (emphasis added). In other words, what matters under the FCPA is "the result [that payments] are intended to produce," *United States v. Kay*, 359 F.3d 738, 743 (5th Cir. 2004) (emphasis added), not whether the payments actually produced that result, *see United States v. Kozeny*, 582 F. Supp. 2d 535, 541 (S.D.N.Y. 2008) ("the proper focus is on [the defendant's] intent" (citing 1 L. Sand, et al., *Modern Federal Jury Instructions- Criminal* ¶ 16.01, Instr. 16-6 (2008)). Likewise, to convict him under the Travel Act and the Texas Commercial Bribery Statute ("TCBS"), the government needs to prove only that he "offer[ed], confer[red], or agree[d] to confer a[] benefit" to influence Espinosa or Guzman in their conduct "in relation to the affairs of" their employer, without their employer's consent. *See* Tex. Penal Code Ann. § 32.43. Defendant's argument that the "confidentiality and advantageousness of the inside information at issue are fundamental to essential statutory elements," Def. Mot. at 13, is therefore incorrect.

To be sure, the government may argue at trial that the nature of the information provided to (or requested by) the defendant helps explain his motive to pay the Mexican officials hundreds of thousands of dollars, but the government is not required to prove that in order for the defendant to be found guilty of the crimes with which he is charged. *See United States v. Miller*, No. 15-

11

0012, 2015 WL 1395298, at *3 (E.D. La. Mar. 25, 2015) (denying motion for bill of particulars, in part, because the requested information was not an element of the offense); *United States v. Wilson*, No. 94–CR–140, 1994 WL 777319, at *15 (E.D. Wis. Nov. 30, 1994) (same); *United States v. St. Pe*, No. 92-459, 1992 WL 345118, at *5 (E.D. La. Nov. 6, 1992) (same, and noting that "it is firmly established that a motion for a bill of particulars is not a legitimate discovery device"); *cf. United States v. Bell*, No. 19-CR-550 (NSR), 2020 WL 7260518, at *4 (S.D.N.Y. Dec. 10, 2020) (same).[4]

Defendant cites *United States v. Asselin*, No. CRIM.04-30033-MAP, 2005 WL 2365326 (D. Mass. Sept. 9, 2005), as an example of a court requiring particularization of "'the benefits [the defendant] received', (the *quo*).'" Def. Mot at 17 (citing and quoting *Asselin*, 2005 WL 2365326 at *2). But the facts in *Asselin* are not analogous. In that case, the bill of particulars was granted because the Indictment "nowhere identifie[d] what contracts Defendant bid, tainted or otherwise, or any 'preferential treatment' or 'rewards' he received." *Asselin*, 2005 WL 2365326 at *2. Here, by contrast, in the Indictment and elsewhere, the government identified and described the business Aguilar sought to obtain or retain in both general terms (business with PPI and PEMEX) and

---

[4] Aguilar argues that if the government does not intend to prove that Guzman and Espinosa provided confidential information, "then it [must] say so." Def. Mot. at 3, 16. But the two cases he cites (*see id*. at 16) provide no support for that argument. In *United States v. Garibalde-Barron*, No. EP-12-CR-1406-KC, 2013 WL 427389 (W.D. Tex. Feb. 4, 2013), the Court ordered a bill of particulars because "the bare Indictment and copious discovery . . . revealed no connection between" the defendant and the charged conspiracy. *Id.* at *5. And *United States v. Murgio*, 209 F. Supp. 3d 698 (S.D.N.Y. 2016), required disclosure of whether the defendant was a principal, or only an aider and abettor, *see id.* at 723, which was a core element of the government's case and completely distinct from the kind of disclosure that Aguilar seeks here.

12

specific terms (a particular contract to supply liquid ethane).

None of the other out-of-circuit cases that the defendant cites are on point: *United States v. Trie*, 21 F. Supp. 2d 7 (D.D.C. 1998), involved a wire fraud scheme which, unlike the bribery scheme here, "logically require[d]" the prosecution to "demonstrat[e]" what property the defendant obtained, *id.* at 22. *United States v. Espy*, 989 F. Supp. 17 (D.D.C. 1997), was a prosecution of a bribe *recipient*, not a bribe payor, and required the government, in an exercise of the court's discretion, to specify the official acts the defendant performed or offered to perform in return for things of value. *United States v. Alperti*, 867 F.Supp. 142 (E.D.N.Y. 1994), likewise involved the prosecution of bribe recipients. Moreover, it did not, in fact, grant a bill of particulars, but, instead, only ordered additional briefing to determine whether the "discovery materials adequately inform Defendants of the [requested] particulars." *Id.* at 149. And even then, it ordered that briefing only because, unlike here, the government would "be required to prove [the requested particulars] at trial." *Id*. Here, again, the government has made clear that the purpose of the bribes was to assist Aguilar in winning business with PPI and PEMEX for Vitol, in particular a contract for liquid ethane, and any information that could help achieve those purposes.

> 1. *Whether the defendant had a knowing, willful and corrupt intent is logically and legally distinct from whether he received confidential, or improper information.*

Aguilar argues that the government cannot prove that he "made any payments 'corruptly' with the improper purpose to influence a foreign official's exercise of his duties, without establishing that the information [he] allegedly paid for was something those officials otherwise could not disclose." *Id.* This is incorrect. The FCPA requires only that Aguilar acted with a

13

certain mental state; namely, that he acted with "corrupt intent," such that the relevant act was "done with an evil motive or wrongful purpose of influencing a foreign official to misuse his position." *S.E.C. v. Jackson*, 908 F. Supp. 2d 834, 860 (S.D. Tex. 2012); *see Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber*, 327 F.3d 173, 182 (2d Cir. 2003). Similarly, although the FCPA does not define "willfulness," "[a]s a general matter, when used in the criminal context, a 'willful' act is one undertaken with a 'bad purpose.'" *Bryan v. United States*, 524 U.S. 184, 191, (1998). "In other words, in order to establish a 'willful' violation of a statute, the Government must prove that the defendant acted with knowledge that his conduct was unlawful." *Id.* (quotation marks omitted); *United States v. Kay*, 513 F.3d 432, 449 (5th Cir. 2007) (noting that defendants need not specifically know that they are violating the FCPA).

Paying bribes to Espinosa and Guzman to help Vitol win a contract is corrupt, regardless of what kind of information or help Espinosa and Guzman ultimately provided Aguilar, or even if they provided him no information—or help—at all. And if Aguilar knew that paying those bribes was unlawful, as the government intends to prove, then the conduct was willful. What matters for purposes of this element is Aguilar's mental state, not what Espinosa and Guzman ultimately did or did not do to fulfill their end of the bargain.

        2.     *The FCPA does not require the actual provision of an improper advantage.*

Aguilar argues that the FCPA requires proof that any advantage received was actually improper. *Id*. This argument is also incorrect. Aguilar need not have received an advantage, let alone an improper advantage, in order to have violated the FCPA. Aguilar violated the FCPA

14

because he paid bribes "for purposes of" securing an improper advantage (or one of the other three prohibited purposes under 15 U.S.C. § 78dd-2(a)(1)). It is no defense to say that Espinosa and Guzman did not, in fact, provide an improper advantage, or that they provided no advantage at all because the only information they provided was routine, unhelpful, or otherwise proper. Again, what matters is Aguilar's corrupt intent or purpose.

> 3. *The Texas Commercial Bribery Statute does not require Aguilar to have received a "private advantage" or "influence."*

Finally, Aguilar argues that the TCBS underlying the Travel Act charge requires that Aguilar have received a "private advantage" or "influence." This, also, is incorrect and is based on a mischaracterization of case law. Aguilar violated the Texas Commercial Bribery Statute if he "offer[ed], confer[red], or agree[d] to confer a[] benefit" to influence Espinosa or Guzman in their conduct "in relation to the affairs of" their employer, without their employer's consent. Texas Commercial Bribery Statute 32.43(c), (b). It again makes no difference whether Espinosa or Guzman actually provided any information in return for the bribes or only provided routine or unhelpful information.

Aguilar argues that *United States v. Barker*, No. 3:16-CR-516-D, 2017 WL 4167512, at *15 (N.D. Tex. Sept. 20, 2017), shows "that § 32.43 requires that there be a 'private advantage' conferred on the bribor." Def's Mot. 13. n.2. That claim is false: the passage Aguilar cites refers to a "private advantage"—*i.e.* bribe money—conferred on the *bribe recipient*, not a private advantage conferred on the bribe payor. *See Barker*, WL 4167512, at *15 (noting that "public corruption statutes often embody the concept that any action induced by a bribe harms the public *because the bribe recipient* has 'set aside the public trust for private advantage'" (emphasis added)

15

(citations omitted)).   Moreover, *Barker* stands for the opposite of what Aguilar suggests: rather than requiring particularized proof or pleading of the supposed harm to the fiduciary (*e.g.*, the release of confidential information), the case assumes that the TCBS "does not require [any such] proof," *id.*, much less particularized pleading of it in advance of trial.

Nor does the other case defendant cites, *Weightman v. State*, 975 S.W.2d 621 (Tex. Crim. App. 1998) (en banc), support his position.  Indeed, this opinion does not address the TCBS at all. Instead, the Court of Appeals "granted review … to determine whether … [there was] evidence sufficient to support appellants' conviction *for theft of trade secrets*." *Weightman* 975 S.W.2d at 622 (emphasis added); *see id.* 622-24 (discussing whether there was sufficient evidence to show that certain machinery drawings were "articles" that constituted "trade secrets" under Tex. Penal Code Ann. § 31.05).  The *Weightman* court's opinion and analysis is completely irrelevant as to the elements of the TCBS.[5]

    C.    *The Court's reasoning in the Eastern District of New York was persuasive*

Judge Vitaliano in the EDNY Case reached the same conclusions as the above when he denied the defendant's Third Motion For A Bill Of Particulars as to the Mexico-Related Scheme. EDNY Case, Dkt. 165.[6]  In his motion, defendant attempts to minimize the relevance of that decision.  He argues that "[b]ecause the alleged scheme was just a small part of that enormous and complex case—which focuses instead on an alleged 'Ecuador Bribery Scheme" not at issue here,

---

[5] The defendants in *Weightman* had also been convicted of several counts under the TCBS, but the opinion cited by defendant did not address those charges.

[6] The Court did not reach any conclusions related to the Travel Act or the TCBS because those charges were not brought in the EDNY Case.

16

. . . Judge Vitaliano determined that, in the context of that case, Mexico-related particulars were unnecessary." Def. Mot. at 23. Putting aside the inaccuracy of defendant's characterization of the Ecuador bribe scheme's complexity in comparison with the Mexico bribe scheme, nowhere in Judge Vitaliano's Memorandum and Order did he mention the relative importance or scope of the Mexico-related charges as being a factor in denying the defendant's Motion for a Third Bill of Particulars. Rather, he explained that:

> the government [had] provided [the information sought] in broad strokes in its Superseding Indictment by alleging, in relevant part, that Aguilar paid bribes in order to receive "confidential inside information" with the goal of securing business for Vitol, and indeed, specifie[d] that Aguilar sent a communication on a particular day seeking "information concerning Vitol's competitors in connection with a bidding process for business with PPI."

EDNY Case at 3-4. Judge Vitaliano also noted that:

> the confidential or inside nature of that information is not a separate statutory element of the offense, see 15 U.S.C. § 78dd-2(a), distinguishing the instant case from the various insider trading cases relied upon by defendant. In those cases, unlike the instant prosecution, the inside information was the thing of value being offered by the defendant. See Def.'s Mem. at 8–10 (collecting insider trading cases). By contrast, Aguilar here is alleged to have offered bribes in exchange for the information rather than the other way around.

*Id.* at 4.

To be sure, the case charged here in the Southern District of Texas is separate and distinct from the case charged in the Eastern District of New York, and this Court is of course free to "exercise its own independent, fresh-eyed judgment," as urged by the defendant. Nonetheless, Judge Vitaliano's ruling, while not binding, is certainly persuasive in its reasoning. Moreover, the

17

government notes that granting the defendant's bill of particulars here would substantially undermine Judge Vitaliano's ruling and management of the Brooklyn trial because Aguilar would use the information to gain additional discovery not just here in the Southern District of Texas, but also in the Eastern District of New York, the jurisdiction in which Aguilar's first trial is fast approaching.

      Conversely, as a result of the trial in the Eastern District of New York, the defendant will receive particulars not just about the nature of the information passed from the Mexican officials to the defendant, but a detailed road map of the government's entire case against him. In other words, the very same facts that will be at issue here in the Southern District of Texas will first be aired and litigated in New York. Before trial in this case begins, the defendant will have all the information, and more, that he asks for in the instant motion. At a minimum, therefore, this Court should deny the defendant's motion without prejudice to its renewal after the trial in the Eastern District of New York.

**CONCLUSION**

The government's charging instruments and discovery fully inform the defendant of the nature of the charges against him, as will the upcoming trial in the Eastern District of New York. Accordingly, for the reasons set forth above, the defendant's motion should be denied.

Respectfully submitted,

ALAMDAR S. HAMDANI
United States Attorney

By: /s/
Sherin Daniel
Suzanne Elmilady
Assistant United States Attorneys
Southern District of Texas
Tel: (713) 567-9000


GLENN S. LEON
Chief, Fraud Section
Criminal Division, U.S. Dept. of Justice

By: /s/
Derek J. Ettinger
Jonathan P. Robell
Assistant Chiefs, FCPA Unit
Clayton P. Solomon
Trial Attorney, FCPA Unit


MARGARET A. MOESER
Acting Chief, Money Laundering and Asset Recovery Section
Criminal Division, U.S. Dept. of Justice

By: /s/
D. Hunter Smith
Trial Attorney, International Unit

BREON PEACE
United States Attorney
Eastern District of New York

By: /s/
Jonathan P. Lax
Matthew R. Galeotti
Assistant U.S. Attorneys

### Certificate of Service

I certify that, on September 25, 2023, this was filed with the Court, a copy of this foregoing was provided to counsel for defendants via ECF and/or e-mail.

*/s/ Suzanne Elmilady*
Suzanne Elmilady
Assistant U.S. Attorney

20